(No. 14576.—Judgment reversed.)
THE CITIZENS COAL MINING COMPANY, Plaintiff in Error,
  vs. THE INDUSTRIAL COMMISSION et al.—(MARGARET
  FUNK, Defendant in Error.)

*Opinion filed June 21, 1922.*

WORKMEN'S COMPENSATION—*when evidence does not support a finding that death was result of accidental injury.* Evidence that an employee was temporarily rendered unable to work immediately after doing heavy lifting in connection with his employment is not sufficient to support a finding that his death five months later was a result of the strain, where the employee continued at his work for two months and where expert witnesses testify that he had symptoms of cancer of the intestines, which could not have been caused by a strain recently received but which is a growth of two or three years.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

T. W. QUINLAN, for plaintiff in error.

KERR, MACDONALD & MURPHY, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Henry Funk was employed by the Citizens Coal Mining Company as a miner, and on February 26, 1920, he sustained an injury in attempting to lift a coal car that was off the track back upon the track. He died on July 24, 1920. His widow presented a claim for compensation to the Industrial Commission and an award was made in her favor, which was confirmed by the circuit court of Sangamon county. A writ of error was allowed on petition of the mining company, which has presented the case on the sole proposition that there is no evidence in the record that the death of the deceased was the result of the accident.

The record contains very little satisfactory evidence from which to determine the cause of death. The deceased

was fifty-one years old and had apparently been in good health prior to the accident. Bernard Pulver, who was an apprentice working with him at the time, testified that in lifting the car Funk hurt himself in his stomach and bowels and had to sit down before he could pick up his tools. This was shortly after dinner. He picked up his tools, waited for Pulver to finish loading a car and then walked out. He could not walk at his usual gait but walked very slowly. He carried his pick out. He went home and rubbed his stomach and left hip with liniment, ate his supper and then went to bed. He returned to work the next day and worked every day until March 3, when he did not go to work but was sick in bed, and Dr. Barker, the family doctor, was then called for the first time. He found Funk suffering with a distended and obstructed bowel. The next day Funk returned to work in the mine. He had a similar trouble with obstruction of the bowels afterwards two or three times, but he continued to work at the mine during March and April. The first half of March the mine worked ten days, of which Funk worked eight; the first half of April the mine worked nine days, of which Funk worked six; and the second half of April the mine worked six days, of which Funk worked five. Dr. Barker testified that he took care of Funk a part of the time, off and on, for two months; that he never saw any signs of external violence, bruises or swelling of the abdomen, but there was a general bloating all over, due to gas. After he had had the other attacks of obstruction of the bowels which have been mentioned he was operated on, and Dr. Barker testified that a big ulceration was found on his bowel, on the descending colon, and there were some adhesions. He did not analyze the tissue but it looked like a cancerous growth. There was a Wasserman test, which showed positive. The ulceration could have been caused from syphilis, but the doctor did not think it could have been caused from a strain by lifting or pushing a car. Dr. Barker's testimony was weak-

ened by an inconsistent report which he had made to the Order of Red Men, stating, in answer to questions, that the disease from which Funk suffered was strain, which caused the inflammation of the bowels and obstruction for the relief of which the doctor operated. In answer to the question, "Did this illness result from injuries or surgical operation?" he answered, "Injuries," and in answer to the question, "How do you understand this disease was contracted?" he answered, "By pushing a car or lifting a car." This report was dated June 1, 1920, and the operation was performed before that time. The doctor stated on the stand that the report was not true to the facts; that it was a little over-liberal, and he had overdrawn it, to say the least. Dr. McCarthy saw Funk in March, when he had a severe pain all over the abdomen, especially in the lower left part. His bowels would not move. They had given him some strong cathartic with no result. The next morning he was removed to the hospital and his bowels moved. The doctor made an examination and saw a small mass in the lower left part of his abdomen and advised him to have X-ray pictures taken and stay for further treatment, but he got up and went home. The doctor testified that he made a tentative diagnosis of a cancerous growth and that a strain could not produce the symptoms he found there. Dr. Don Deal did not see Funk, but he testified that a strain could not cause a cancerous growth on the colon or a perforation of the bowels or an ulcer on the colon. It could not hasten the development of such a cancerous growth. Cancer of the bowels is a very slow growth, and it would take two or three years for a cancerous growth to develop to a point where it would obstruct the bowels.

There was no other evidence as to the cause of the death of the decedent. No witness expressed a decided opinion as to what was the cause. There were no visible effects of the injury. For two months after the injury the deceased worked, substantially, whenever there was work in

303—26

the mine. He suffered occasionally from obstruction of the bowels, but there is nothing in the evidence to connect that obstruction with the accident. The evidence does not furnish the basis for a reasonable conjecture that he died from an injury received in the mine.

The judgment will be reversed and the record of the Industrial Commission quashed.          *Judgment reversed.*