SCOBEY, ADMINISTRATRIX *v.* SOUTHERN LUMBER COMPANY.

4-9441                                            238 S. W. 2d 640

Opinion delivered March 26, 1951.

Rehearing denied April 23, 1951.

*Wilson, Kimpel & Nobles,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

ROBINSON, J.   The Workmen's Compensation Commission denied a claim for compensation arising by reason of the death of W. Fred Scobey, and such action of the Commission was sustained by the Circuit Court. Scobey died from cancer of the lungs.   The sole question is whether death was due to accidental injuries which arose out of, and in the course of, his employment.

Scobey worked for the Southern Lumber Company almost continuously from 1918 to April, 1942, at which time he went to Barnes' Hospital in St. Louis where he died April 22, 1942. Scobey was employed by the Lumber Company as a saw-filer and performed his work in a room on the second floor of the mill building. This room, according to the undisputed testimony, was poorly ventilated and had no provisions for the removal of the emery dust, filings and saw-dust. It is undisputed that the filing of the saws caused small particles of emery dust to fill the air and that the floor of the room was improperly sealed, containing large cracks and holes. Directly below the filing room were located large saws used in cutting lumber, and dust and fumes from this operation drifted upward through the cracks into the filing room and contributed to the hazardous condition of the air.

Subsequent to Scobey's death, a claim was filed in which the nature of the accident was given as "inhaling emery and steel dust," and the cause of injury or death as "epitheliomatous cancer."

"All the courts of this country are agreed that, in determining whether a disputed claim under the Workmen's Compensation law should be allowed, the terms of the Act must be given a liberal interpretation in favor of the claimant; and the Act itself provides that in a proceeding to enforce a claim under the Act 'there shall be a *prima facie* presumption that the claim comes within the provisions of this Act.' " *Batesville White Lime Co.* v. *Bell*, 212 Ark. 23, 205 S. W. 2d 31.

Epitheliomatous cancer is listed as an occupational disease in the Workmen's Compensation Act, Ark. Stats., § 81-1314. Dr. Evarts A. Graham, Professor of Surgery, Washington University and Chief Surgeon at Barnes Hospital, wrote that Scobey died of epitheliomatous cancer. However, the epitheliomatous cancer, which is listed as an occupational disease in the Workmen's Compensation Act, refers to one caused by tar pitch, bitumen, mineral oil, or any of those products, and there is no showing that decedent's cancer was caused by any of these substances. The question that necessarily follows is: Was

the cancer caused or aggravated by an injury resulting in death? There is no substantial evidence in the record to the effect that the cancer was not aggravated by an injury. To sustain its case, the Lumber Company relies chiefly on two letters written by Dr. Graham. Dr. Graham wrote J. R. Wilson, one of the attorneys for appellant, as follows:

"I have your letter of August 21. Both Dr. Goodof and I will be able to see you on the morning of September 1st between 10:00 A. M. and noon. Before you come here, however, I wish you to have a clear understanding that I cannot honestly express any opinion which would indicate that Mr. Scobey's occupation had anything to do with the cancer in his lung. There is no evidence of any kind at the present time which would support such an opinion. I feel very sorry for Mrs. Scobey, and, of course, I would be very glad to help her obtain some money if I could do so honestly.

"I told her when she was here, in fact before Mr. Scobey's death, that I could not make out any connection between his occupation and his cancer, and I have told her so twice since his death in letters to her. I am unwilling to make any statement which would imply that I felt that his cancer was due to his occupation."

On May 19, 1944, Dr. Graham advised a representative of appellee:

"Following up our conversation, I am writing you this letter concerning the case of Mr. Fred William Scobey, of Warren, Arkansas, who died in the Barnes Hospital of a carcinoma of the right lung, on April 20, 1942.

"There is no evidence that is trustworthy that the inhalation of emery dust, or of fumes of tar, pitch, bitumen, mineral oil or paraffin has anything to do with the production of a cancer of the lung. The same may be said for inhalation of the products themselves, including the inhalation of steel filings. At the present time, there is no satisfactory explanation of the origin of a primary cancer of the lung. Certainly there is no justification for any claim that in Mr. Scobey's case, his cancer was in any

way connected with the fact that he might possibly have inhaled some of the things mentioned.''

But, these letters must be considered along with other testimony of Dr. Graham. In referring to the cancer that caused the death of decedent, Dr. Graham was asked the following question:

''Q.   Are you able to state the cause of such a cancer, Dr. Graham?

''A.   Unfortunately not.   No one knows the cause of such a cancer.''

And again:

''Q.   * * * As I get it, in all of the opinions that you have expressed about it, you have indicated that you don't think that the exposure to the emery dust and to these fumes caused the cancer, but that they would accelerate a cancerous condition, aggravate it and make it worse?

''A.   I said 'might' instead of 'would,' Mr. Wilson.

''Q.   You said 'might.'   Well, that is an expression that doctors use, isn't it, when they mean it does do it in some cases?

''A.   Yes, that is right.''

The effect of Dr. Graham's testimony is that he does not know what causes cancer, but that the exposure to emery dust and fumes might accelerate or aggravate a cancerous condition.   Therefore, it necessarily follows that his testimony is not substantial evidence to the effect that emery dust, saw filings and saw-dust did not aggravate a cancer, which resulted in the death of Scobey.

Dr. F. O. Mahoney, a graduate of the Medical Department of Tulane University and past President of the Arkansas Medical Association, testified that it was the emery dust that caused the cancer by constant irritation, and Dr. George F. Burton, radiologist specializing in treatment of cancer by using x-ray and radium, made a thorough study of this case, including the evidence given by Dr. Graham, and he testified:   ''Irritation on any part

of the body has a tendency to produce cancer. * * * We do have some evidence that irritation in the lungs will produce cancer. This has been borne out in the last 10 years. Cancer in the male has been more frequent than in the female. That ratio is 10 to 1. In the last 10 years that ratio has decreased and the ratio in the male and female is becoming more nearly equal. We think that has occurred because of the increase in smokers in women."

Dr. Burton further testified that, in his opinion, the inhalation of any irritant would aggravate a cancerous condition. Normal tissue has a tendency against cancer. If you destroy or damage tissue you make cancer worse. Irritation of a cancer would bring about earlier death. Scobey's cancer probably developed a year or a year and a half before his death. The fact that it took the cancer about a year and a half to kill Scobey after it started, does not make it any less an accident.

In the case of *Murch-Jarvis Co., Inc.* v. *Townsend,* 209 Ark. 956, 193 S. W. 2d 310, this Court said: "Appellants insist, however, that appellee did not suffer an accidental injury because no definite date or occasion can be fixed as to when the aggravation happened. Schneider, in his Workmen's Compensation Text, Vol. 4, Perm. Ed., p. 387, has this to say on the question: 'Diversity of opinion exists as to what constitutes the customarily required definite time and place of an accident. On this question the expressions of the courts vary from the statement that 'accidents do not happen all day' to decisions to the effect that it may require as much as six months for an accident to culminate in a disabling injury. A reasonably definite time is all that is required. A certain fixed and definite event or occurrence is required from which time can be calculated. No stated period can be given as sudden as applied to each case, each must naturally depend on its own circumstances."

Also, in the case of *Lee Mathew Shipping Corporation* v. *United States Employee's Compensation Commission,* 56 Fed. 2d 860, where the inhalation of dust from shoveling copper ore over a period of several days aggravated the preëxisting disease of bronchiectasis, the re-

sulting disability was held to be an "injury," under the Longshoremen's and Harbor Workers' Compensation Act. And, the Missouri Court, in *Vogt* v. *Ford Motor Company*, 138 S. W. 2d 684, held that asthma was a compensable action where it was contracted over a four months period from paint dust.

In the case of *McGregor & Pickett* v. *Arrington*, 206 Ark. 921, 175 S. W. 2d 210, it is said: "As stated in some of the cases it is no less an accident when a man suddenly breaks down than when there is a like mishap to the machine he is operating, nor is it a defense that a workman had some pre-disposing physical weakness, but for which he would not have broken down. If the employment was the cause of the collapse, in the sense that, but for the work he was doing, it would not have occurred when it did, the injury arises out of the employment."

Schneider, in his Workmen's Compensation Text, Vol. 4, § 1328, p. 543, states: "It may be stated generally that if the conditions of the employment, whether due to over-exertion, excessive heat, *excessive inhalation of dust and fumes,* shock, excitement, nervous strain or trauma, tend to increase an employee's blood pressure sufficiently to cause a cerebral hemorrhage, such result constitutes a compensable accident within the intent of most Compensation Acts, though the employee may have been suffering from a preëxisting diseased condition, which predisposed him to such results, or where such result would have occurred in time due to the natural progress of such preëxisting conditions. * * * "

"In determining the sufficiency of the evidence, doubts should be resolved in favor of the claimant, and the evidence should be reasonably construed in his favor." *Herron Lumber Co.* v. *Neal*, 205 Ark. 1093, 172 S. W. 2d 252.

In a very recent case of *Triebsch* v. *Athletic Mining & Smelting Co., ante,* p. 379, 237 S. W. 2d 26, it is said: "We have many times held that the Workmen's Compensation Law should be broadly and liberally construed; and that doubtful cases should be resolved in favor of the claimant. See *Hunter* v. *Summerville*, 205

Ark. 463, 169 S. W. 2d 579; *Elm Springs Canning Co.* v. *Sullins,* 207 Ark. 257, 180 S. W. 2d 113; *Nolen* v. *Wortz Biscuit Co.,* 210 Ark. 446, 196 S. W. 2d 899, and *Batesville White Lime Co.* v. *Bell,* 212 Ark. 23, 205 S. W. 2d 31.

''The liability is based, not upon any act or omission of the employer, but upon the existence of the relationship which the employee bears to the employment, because of and in the course of which he has been injured. And this is not to impose liability upon one person for an injury sustained by another with which the former has no connection; but it is to say, that it is enough if there be a causal connection between the injury and the business in which he employs the latter—a connection substantially contributory, though it need not be the sole or proximate cause.'' *McGregor & Pickett* v. *Arrington, supra.*

The conditions under which Scobey worked, as shown by the undisputed evidence; the testimony of Dr. Mahoney and Dr. Burton; the testimony of Dr. Smith and Dr. Rowland, who, according to the Commission's opinion, testified that the condition under which Scobey worked caused or aggravated the cancer, all considered together is substantial evidence to the effect that the constant inhalation of the emery dust and saw-dust caused an irritation in the lung which accidentally aggravated a cancerous condition, within the meaning of the Workmen's Compensation Law, and caused the death of Scobey. This evidence and the further fact that Dr. Graham's testimony upon which appellee relies, viewed as a whole, is not substantial evidence to the contrary, justifies an award.

While the claim for compensation was pending before the Compensation Commission, appellant filed suit in the Circuit Court asking for judgment against the Lumber Company on the theory that if the Commission should hold that Scobey's death was not the result of a compensable injury, then the appellant would be entitled to recover under the law as it existed in such cases prior to the enactment of Workmen's Compensation Law. On the motion of appellee, this suit was dismissed in Circuit

Court, and in view of our holding that the appellant is entitled to recover under the Workmen's Compensation Law, it necessarily follows that the trial court committed no error in the action taken in that respect, and is, therefore, affirmed.

Judgment of the Circuit Court on the compensation claim is reversed and the cause is remanded with directions that the claim be remanded to the Workmen's Compensation Commission with directions to make an award in accordance with this opinion.

The Chief Justice and WARD, J., dissent.

GRIFFIN SMITH, C.J., dissents. Insofar as I have been able to ascertain, the decision in favor of appellants stands alone as a judicial finding of fact that dust aggravates lung cancer and hastens death—a finding that clashes head-on with the frank admissions of medical men the world over who say they do not know what causes cancer, but are groping scientifically to find the answer and to determine what irritation affects it. Seemingly this court's majority is the only agency holding the heretofore undisclosed key. I would permit the Commission to be the finders of facts, just as the Bradley Circuit Court did.